*E-Filed: March 30, 2015*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER L. KELLEY,<br><br>        Plaintiff,<br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | No. C13-04867 HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 12, 13]** |

Jennifer L. Kelley appeals a final decision by the Commissioner of Social Security Administration denying her application for Disability Insurance Benefits under Title II of the Social Security Act. Presently before the court are the parties' cross-motions for summary judgment. The matter is deemed fully briefed and submitted without oral argument. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. Upon consideration of the moving papers, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff was born in 1965. Administrative Record ("AR") 106. She previously worked as an administrator, membership secretary, accounting clerk, human resources clerk, patient insurance clerk, and store manager, among other positions. AR 74-81. In June 2010, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. AR

9, 106-07, 131-32. Plaintiff alleged disability beginning on May 10, 2007. AR 9, 131. After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on May 8, 2012. AR 57-107.

The ALJ issued a written decision dated June 29, 2012. AR 6-22. The ALJ evaluated Plaintiff's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. AR 6-22; *see* 20 C.F.R. §§ 404.1520, 416-920. Ultimately, the ALJ found that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 10, 2007, the alleged onset date, through December 31, 2011, the date last insured." AR 22.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. AR 11. At step two, he determined that chronic pain, irritable bowel syndrome, and history of idiopathic hypersomnia disorder were severe impairments. AR 11. At step three, the ALJ concluded that Plaintiff did not have impairments that met or medically equaled the criteria of a presumptively disabling impairment. AR 15. Accordingly, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. 404.1567(b)." AR 16. The ALJ, however, determined that Plaintiff was unable to stand or walk for more than two hours in a normal eight-hour workday. AR 16. The ALJ concluded that Plaintiff could occasionally stoop and bend during a normal workday, was unable to balance during a normal workday, and could not climb ladders, ropes, or scaffolds during a normal workday, and could not "work in environments with exposure to temperature extremes, unprotected heights, hazardous equipment, operating motor vehicles, or where the safety of others could be affected." AR 16. At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a patient insurance clerk, human resources clerk, accounting clerk, membership secretary, and administrative assistant. AR 21. Accordingly, the ALJ found that she was not disabled. AR 22.

The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 1-3. Plaintiff now seeks judicial review of that decision.

**LEGAL STANDARD**

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *accord Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258. "[T]he court will not reverse the decision of the ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**DISCUSSION**

Plaintiff moves for an order either granting summary judgment in favor of Plaintiff holding that Plaintiff was disabled under the Social Security Act, or remanding the case for a new hearing. Specifically, Plaintiff contends that the ALJ erred by (1) failing to include all of Plaintiff's impairments in her analysis; (2) failing to properly credit the opinions of Plaintiff's treating physicians; and (3) rejecting the vocational testimony about the capacity of a hypothetical individual to engage in substantial gainful activity with restrictions consistent with those assessed by Dr. Agah, Dr. Rubenstein, and Dr. Menzie.

///
///
///

### A. Plaintiff's Impairments

Plaintiff argues that the ALJ failed to include all of Plaintiff's severe impairments in her analysis. According to Plaintiff, the ALJ improperly held that Plaintiff's myasthenia gravis[1] was not a medically determinable impairment and did not consider it in her analysis. AR 12. In making this determination, the ALJ relied on the testimony of medical expert, Dr. Samuel Landau, an Internist and Cardiologist. AR 62. Dr. Landau testified that the medical evidence did not include the test results needed to support a diagnosis of myasthenia gravis. AR 69.

As the ALJ found, the objective medical evidence does not support Plaintiff's allegations of symptoms consistent with myasthenia gravis. AR 12. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (a medically determinable impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings; "under no circumstances may the existence of an impairment be established on the basis of symptoms alone" (citing Social Security Ruling (SSR) 96-4p, available at 1996 WL 374187, at *1)). For instance, Plaintiff did not undergo testing that confirmed the presence of myasthenia gravis. AR 12. One of Plaintiff's examining neurologists "ruled out" myasthenia gravis as a diagnosis in June 2007 because of "insufficient labs and insufficient clinical presentation suggestive of the condition." AR 241. The ALJ observed that Plaintiff repeatedly had normal visual acuity during optometric examinations. AR 12, 222, 350. Plaintiff's treating optometrist, Kimberly Menzie, O.D., noted in October 2010 that Plaintiff had "no ocular pathology." AR 291. Moreover, Plaintiff stated that she did not experience any abnormalities in her vision during a November 2011 visit with one of her treating physicians, Shahrzad Zarghamee, M.D. AR 468. In addition, Plaintiff's neurological examinations were consistently unremarkable. AR 226, 264-65, 285, 468, 483, 485. The ALJ reasonably determined that the above objective clinical findings and observations failed to establish myasthenia gravis as a medically determinable impairment. AR 12. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").

---

[1] Myasthenia gravis is a "chronic autoimmune neuromuscular disease characterized by varying degrees of weakness of the skeletal (voluntary) muscles of the body." Myasthenia Gravis Fact Sheet, National Institute of Neurological Disorders and Stroke (Mar. 14, 2014), http://www.ninds.nih.gov/disorders/myasthenia_gravis/detail_myasthenia_gravis.htm.

The ALJ properly relied on the opinion of Dr. Landau to support her conclusion that myasthenia gravis was not one of Plaintiff's medically determinable impairments. AR 12. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As Dr. Landau testified, there was "no objective evidence that [Plaintiff had] myasthenia gravis." AR 69. In particular, Dr. Landau testified that Plaintiff had not undergone laboratory testing that would confirm a diagnosis of myasthenia gravis. AR 72. Moreover, he testified that there was no objective confirmation of Plaintiff's allegations of double vision. AR 72. Plaintiff does not point to any laboratory testing or other objective clinical findings to dispute the ALJ's reliance upon Dr. Landau's testimony.

In addition, Plaintiff argues that the ALJ failed to consider the conditions included by Dr. Zarghamee as possible side effects of medication. This argument is irrelevant. The ALJ proceeded past this step to consider all of the functional limitations the evidence established, regardless of severity. AR 11-21. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). In addition, Plaintiff concedes that the ALJ properly drew upon the objective medical evidence to exclude functional limitations linked to those alleged side effects from the RFC. AR 11-21. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints.").

### B. The Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ improperly rejected the opinions of Drs. Agah, Rubenstein, and Menzie for reasons not supported by the record and which are inconsistent with applicable regulations and Ninth Circuit case law. According to Plaintiff, the ALJ improperly gave controlling weight to the opinion of the medical examiner, Dr. Landau, which contained numerous factual errors.

When evaluating medical evidence, an ALJ must give a treating physician's opinion "substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present

5

'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for disbelieving the treating physician. *Id.* at 1228 n.8.

First, the ALJ sufficiently justified her rejection of Dr. Agah's November 2011 opinion that Plaintiff was disabled. The ALJ discounted Dr. Agah's opinion that Plaintiff could not sustain work-related activities because it was inconsistent with the objective medical evidence. AR 20, 339-42. *See Bayliss*, 427 F.3d at 1216 (an ALJ need not accept the opinion of a doctor if that opinion is inadequately supported by clinical findings).

For instance, to support his conclusion that Plaintiff could not sustain work-related activities, Dr. Agah cited Plaintiff's history of spinal stenosis (narrowing of the spinal canal) and diffuse neurophathy. AR 339, 342. However, the ALJ properly observed that the objective medical evidence (such as scans and clinical observations) provided no support for Dr. Agah's findings. As discussed above, Plaintiff's treating and examining physicians (including Dr. Agah) consistently observed that Plaintiff had normal neurological functioning. AR 226, 264-65, 285, 468, 483, 485, 487. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (the ALJ properly rejected a treating physician's opinion by noting that the physician's conclusions regarding the claimant's functional limitations "did not mesh with her objective data or history").

The ALJ also properly rejected Dr. Agah's opinion by noting that he relied on Plaintiff's unsubstantiated allegations of myasthenia gravis to reach his conclusions about her functional limitations. AR 20, 339. As discussed above, inspections of Plaintiff's vision were repeatedly normal. AR 222, 291, 350. Plaintiff denied experiencing abnormalities in her vision during a visit with Dr. Zarghamee in November 2011. AR 468. The ALJ further noted that Dr. Agah omitted Plaintiff's alleged myasthenia gravis from disability certifications he submitted on her behalf to the State of California between July 2007 and April 2008. AR 20, 212-15. The ALJ properly rejected Dr. Agah's opinion that Plaintiff was disabled by noting the unexplained divergence between the objective clinical findings and his conclusions. AR 20. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (an ALJ properly rejected a treating source's opinion when "all the earlier medical

reports, including those of [the treating source]" contracted a finding of disability and the treating source's opinion lacked detailed clinical findings).

Second, the ALJ properly rejected Dr. Rubenstein's opinion. The ALJ appropriately determined that the objective medical evidence was inconsistent with Dr. Rubenstein's November 2011 opinion that Plaintiff could not sustain work-related activities. AR 19-20, 343-46. *See Bayliss*, 427 F.3d at 1216. For instance, while Dr. Rubenstein cited Plaintiff's history of respiratory allergies to support his opinion, Plaintiff consistently had normal respiratory functioning. AR 220, 223, 226, 235, 264, 287, 289, 356, 363, 369, 377. 468, 482, 485, 487. In addition, as the ALJ noted, Plaintiff's allergy symptoms improved with treatment, such as medication and the avoidance of certain foods. AR 13, 19, 289, 292-93. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

In addition, the ALJ properly discounted Dr. Rubenstein's opinion that Plaintiff was disabled by noting that he based his conclusions upon impairments that fell outside of his area of specialization. AR 19-20. *See Holohan v. Massanari*, 246 F.3d 1195, 1202-03 n.2 (9th Cir. 2001) (recognizing that a treating physician's opinion on some matters may be entitled to little weight, if any, where physician offers an opinion on a matter not related to his area of specialization (citing 20 C.F.R. § 404.1527(c)(5)).) Specifically, the ALJ reasonably determined that Dr. Rubenstein's specialty (immunology) provided insufficient foundation for his assessment of the limiting effects of Plaintiff's alleged fibromyalgia and chronic fatigue syndrome. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("the ALJ is entitled to draw inferences logically flowing from the evidence" (internal quotation marks omitted)).

The ALJ properly observed that the objective medical evidence did not support Dr. Rubenstein's findings regarding Plaintiff's alleged fibromyalgia and chronic fatigue syndrome. AR 19-20. As discussed above, Plaintiff's neurological functioning was consistently intact during physical examinations—results that belied Dr. Rubenstein's finding about Plaintiff's "dizziness" and "weakness." AR 226, 264-65, 285, 343, 468, 483, 485, 487. Moreover, although Dr. Rubenstein stated in November 2011 that Plaintiff had "overwhelming fatigue," he observed in

December 2010 that Plaintiff's fatigue symptoms were not severe. AR 287, 343. *See Tommasetti*, 533 F.3d 1041.

Third, the ALJ properly rejected Dr. Menzie's December 2011 opinion that Plaintiff was disabled. The ALJ properly determined that inconsistencies within Dr. Menzie's opinion undercut its probative value. AR 19. Specifically, the ALJ observed a contradiction between Dr. Menzie's observation that Plaintiff had normal visual acuity and "objectively" full visual fields and her conclusion that Plaintiff could not work because of her alleged visual abnormalities. AR 19, 350. *See Bayliss*, 427 F.3d at 1216 (an ALJ properly rejected a doctor's conclusion about the claimant's functional limitations because the doctor's observations from the same day contradicted that conclusion; "[s]uch a discrepancy is a clear and convincing reason for not relying on the doctor's opinion"); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (an ALJ properly rejected a treating physician's opinion because it rested on the claimant's "own perception or description" of his problems).

In addition, the ALJ observed that the objective medical evidence (including Dr. Menzie's treatment notes) provided no support for Dr. Menzie's conclusion that Plaintiff's alleged visual limitations interfered with her ability to concentrate. AR 19, 220, 264-65, 291, 350. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (an ALJ properly discounted a treating physician's limitations for being "so extreme as to be implausible" and "not supported by any findings made by any doctor").

Moreover, the ALJ properly referenced Dr. Landau's testimony to reinforce her rejection of Dr. Menzie's opinion that Plaintiff was disabled. AR 19. *See Thomas*, 278 F.3d at 957. To support her conclusions about Plaintiff's functional limitations, Dr. Menzie listed "ocular myasthenia gravis" as one of Plaintiff's impairments. AR 350. As discussed above, however, Dr. Landau testified that there was no objective medical evidence that confirmed this diagnosis. AR 69, 72. Because Dr. Landau's testimony about this impairment was consistent with the objective medical evidence, the ALJ appropriately used his testimony to discount Dr. Menzie's conclusions about Plaintiff's functional limitations. *See Batson*, 359 F.3d at 1195 (an ALJ properly rejected a treating

physician's opinion, in part, by noting that it was contradicted by other statements and assessments of the claimant's condition).

### C. Testimony of the Vocational Expert

Plaintiff argues that the ALJ improperly rejected the vocational testimony about the capacity of a hypothetical individual to engage in substantial gainful activity with restrictions consistent with those assessed by Dr. Agah, Dr. Rubenstein, and Dr. Menzie.

The ALJ properly rejected the vocational expert testimony about the capacity of a hypothetical individual to engage in substantial gainful activity. The vocational expert's opinion regarding certain functional limitations has no evidentiary value if the underlying assumptions in the hypothetical posed to the vocational expert are not supported by the record. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) ("The testimony of a vocational expert is valuable only to the extent that it is supported by medical evidence." (internal quotation marks omitted).).

As discussed above, the ALJ sufficiently justified her rejection of Dr. Agah, Dr. Rubenstein, and Dr. Menzie's opinions regarding Plaintiff's functional capacity. Accordingly, she appropriately confined her analysis at step four of the sequential evaluation process to only those limitations supported by substantial evidence. AR 21-22. *See Batson*, 359 F.3d at 1197 (affirming the ALJ's rejection of vocational expert testimony based in part upon properly discounted medical opinions); *Rollins*, 261 F.3d at 857 ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [the claimant] had claimed, but had failed to prove.").

## CONCLUSION

For the foregoing reasons, the Court finds that the final decision of the Commissioner is supported by substantial evidence and free of legal error. Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: March 30, 2015

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C13-04867 HRL Notice will be electronically mailed to:**

Alex Gene Tse    alex.tse@usdoj.gov, kathy.terry@usdoj.gov, USACAN.SSA@usdoj.gov

Asim H. Modi    asim.modi@ssa.gov

Tom F. Weathered    tweathered4@gmail.com, tweathered4@gmil.net

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**